1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF CALIFORNIA**

7

8  William Jackson Kitchens,        )    CV-05-1567-DCB    P
                                    )
9              Plaintiff,           )   **ORDER**
                                    )
10 vs.                              )
                                    )
11                                  )
   Margaret Mims, et al.,           )
12                                  )
               Defendants.          )
13 _____   )
                                    )
14

15      Plaintiff William Jackson Kitchens[1], who is confined in the Coalinga

16 State Hospital, Coalinga, California, filed this *pro se* civil rights

17 action pursuant to 42 U.S.C. §1983 in a First Amended Complaint against

18 Sheriff Margaret Mims and Lt. Gary  Johnson of Fresno County (County

19 Defendants), as well as Derrick Watkins, Monica Garcia and Nora Varela

20 (Transport  Defendants),  individuals  formerly  employed  by  Transcor

21

22

23

----

24      [1] Plaintiff has been adjudicated a sexually violent predator (SVP).
   The sexual psychopath laws provide for examination and commitment of
25 certain offenders upon conviction of certain crimes. This classification
   involves the following elements: (1) a mental disorder; (2) a propensity
26 to commit sexual acts; and (3) dangerousness to others. The SVP laws are
   designed to extend the person's confinement for society's protection.
27 Cal. Wel. & Inst. Code §§ 6600-6609.3; *Kansas v. Hendricks*, 521 U.S. 346
   (1997).
28

1  America, LLC, a private third-party prisoner extradition company[2].

2  Plaintiff filed a Motion for Summary Judgment against County Defendants

3  (Doc. No. 90). County Defendants filed a Cross-Motion for Summary

4  Judgment (Doc. No. 99) and Transport Defendants filed a Motion for

5  Judgment on the Pleadings or in the Alternative Motion for Summary

6  Judgment (Doc. No. 98). Plaintiff opposed both dispositive motions (Doc.

7  Nos. 116, 117, 118). In addition, Defendants filed Requests for Judicial

8  Notice of documents attached to the Plaintiff's First Amended Complaint.

9  The motions are ready for ruling.

10      The Court will deny Plaintiff's motion, grant Defendants' motions,

11  and terminate the case.

12                          **SUMMARY**

13      Plaintiff is a SVP civil detainee proceeding pro se and in forma

14  pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

15  Plaintiff filed the instant action on December 5, 2005, in the Sacramento

16  Division of the United States District Court for the Eastern District of

17  California. The case was transferred to the Fresno Division and received

18  on December 9, 2005. Plaintiff filed a First Amended Complaint on August

19  5, 2008. (Doc. No. 75.) A discovery schedule was entered on October 17,

20  2008. This action was transferred to Judge David C. Bury of the United

21  States District Court for the District of Arizona on November 25, 2008.

22  On March 9, 2009, Plaintiff filed a Motion for Summary Judgment which was

23  supplemented on July 27, 2009. On June 15, 2009, Transport Defendants

24  filed a Motion for Summary Judgment and on the same date, County

25

26

27      ────────────────

28      [2]Defendant Transcor was voluntarily dismissed from the action by
    Plaintiff, leaving three individual employees as the remaining Transport
    Defendants.

                          - 2 -

1  Defendants filed a Motion for Summary Judgment. All motions were at issue
2  on August 13, 2009.

3  In a nutshell, Plaintiff alleges that his Fourteenth Amendment due
4  process rights were violated when County Defendants failed to protect him
5  pursuant to California Penal Code §§1610 and 4002 when Plaintiff, a SVP
6  civil detainee, was housed with criminal inmates and failed to provide
7  constitutionally adequate conditions of detention for a SVP civil
8  detainee. In addition, Plaintiff claims that he was protected under the
9  Lanterman-Petris-Short Act (LPSA).    Plaintiff alleges that County
10 Defendants Mimms and Johnson were responsible for implementation of
11 policies, practices, and procedures which, when followed, resulted in
12 denial of privileges and risks to Plaintiff's safety. Plaintiff alleged
13 that County Defendants denied him law library privileges to which he was
14 entitled and that he was subject to an unclothed body search and a visual
15 body-cavity search, without his consent, upon his arrival at the jail.
16 Plaintiff alleges that he was treated improperly under laws governing the
17 rights of SVP civil detainees by being housed with penal commitment
18 inmates, placed in disciplinary isolation and denied privileges and
19 access to the law library. Plaintiff also alleges that he was not given
20 access to psychiatric treatment at the jail. Plaintiff makes reference
21 to all of these incidents together as examples of his claim that County
22 Defendants improperly housed him at the jail.

23 Plaintiff's claims against the Transport Defendants are that he was
24 not properly segregated during transport from Atascadero to the Fresno
25 County Jail (FCJ) on August 25, 2005, and, upon arrival at the county
26 jail, he was not properly placed in a segregated area designated for SVP
27 civil detainees.

28

**FACTUAL BACKGROUND/UNCONTROVERTED FACTS**

**A.   Transport from Atascadero to Fresno County Jail**

On August 12, 2005, the Fresno County Superior Court issued an order to both the Fresno County Sheriff and the Director of the Atascadero State Hospital regarding Plaintiff's legal status. The court order states that "Mr. Kitchens is held pending civil process under the sexually violent predator laws and shall be administratively segregated and treated as required by the California Penal Code §§4002(b) and 1610." Transcor America is a private third-party prisoner extradition company which provides transportation services to law enforcement and corrections agencies throughout the country, including the State of California. The transportation by Transcor of a person detained by the State of California is arranged by the particular agency and/or holding facility which contacts Transcor to request that the individual be moved from one location to another. When a request for transportation is received, a schedule is created which determines when the individual will reach his or her specified location.  At proximately the same time, information is gathered about the individual to ensure that the employees of Transcor will pickup the correct person at the sending facility and be aware of any pertinent information regarding safety or security concerns.

As a result of potential scheduling demands, individuals being transported by Transcor are not always driven to their ultimate destination in the most geographically direct manner possible.  This is due to the fact that other individuals being transported in the same vehicle may need to reach a particular location at a specific time.  Such scheduling limitations are imposed on Transcor by the State of California and/or the agency which has contracted with Transcor for its services.

1    Transcor uses a fleet of highly secure vehicles to facilitate the

2    transportation of individuals in state custody from one facility to

3    another.   The interior design of its vehicles allows for limited

4    segregation of certain passengers via seating compartments separated by

5    metal walls.  Most individuals are placed in the same seating area,

6    although the vehicles have at least one segregated compartment which can

7    hold a limited number of passengers. It is Transcor's policy to restrain

8    all of the individuals which it transports so as to prevent the

9    passengers from being able to physically harm another person.  The use

10   of restraints prevents the transported individuals from committing acts

11   of violence towards each other by limiting the range of their physical

12   movement through the use of handcuffs and other approved restraining

13   devices.  Such restraints are also necessary to ensure that Transcor

14   employees are able to maintain control over the passengers while the

15   vehicle is traveling to its destination; there are usually more

16   individuals being transported than there are employees of Transcor

17   present in the vehicle.  The exact arrangement of the persons being

18   transported on a given journey is based upon a determination of how to

19   best maintain the security and safety of all occupants of the vehicle.

20   However, it is the responsibility of the holding facility where the

21   individual is being picked up and/or dropped off to provide Transcor with

22   any special instructions to segregate that person from other individuals

23   traveling in the vehicle. Any such instructions are then noted in

24   Transcor's internal documentation.  Otherwise, neither Transcor nor its

25   employees are provided with information regarding the nature of a

26   person's crime or reason for detention.

27   On August 25, 2005, Transcor transported Plaintiff from Atascadero

28   State Hospital in Atascadero, CA to the Fresno County Jail in Fresno, CA.

Transcor performed this transportation service pursuant to a request from the Fresno County Sheriff's Department. Transcor Defendants are former employees of Transcor and were the Transcor officers/agents who supervised and effectuated the transportation of Plaintiff on the date in question.

Plaintiff was picked up by Transcor Defendants at Atascadero State Hospital at approximately 11:58 a.m. and dropped off at the Fresno County Jail at approximately 10:48 p.m. that same day. (Smith Declaration, Ex. B.)  This secure vehicular transport was supervised and effectuated by the individual Transport Defendants.  En route to the jail, Plaintiff was not segregated from the prison inmates on the bus.  Several other individuals were transported in the same vehicle in which Plaintiff was traveling.  From Atascadero and prior to the arrival in Fresno, additional stops were made in San Louis Obispo and other locations to pick up and drop off various prisoners and detainees.

Transcor picked up two female prisoners in San Louis Obispo and transported them in the same vehicle that was carrying Plaintiff.  The female prisoners were placed into a segregated seating area inside of the vehicle.  This area was reserved for the female inmates on this trip and none of the male passengers were segregated from one another. During Defendants' transportation of Plaintiff on August 25, 2005, Plaintiff's hands were shackled and handcuffed to his waist.  Plaintiff's feet were also shackled with a chain. All other passengers were restrained in the same manner.  Neither the Atascadero State Hospital nor the Fresno County Sheriff's Department provided any specific instructions to Transcor to segregate Plaintiff from any other individuals being transported in its vehicle.  Notwithstanding that fact, Plaintiff was never assaulted or

physically harmed at any point during his journey from Atascadero State Hospital to FCJ on August 25, 2005.

**B.  Temporary County Detention**

Plaintiff arrived at the FCJ at approximately 10:30 p.m., and his restraints were removed.  At approximately 11:45 p.m., Plaintiff was medically processed. Plaintiff took off his clothes to his boxer shorts, and then turned around in order to be searched.  After this search, Plaintiff was placed in a holding cell.

On August 26, 2005, Plaintiff was classified and housed in MSEG-AJ1A, a 45-man open dormitory area at the annex within the FCJ that contained detainees who had been charged or were being prosecuted for sex offenses. MSEG-AJ1A contained bunk beds, television, coffee, a telephone area, and access to an exercise area.  It was the practice of the FCJ to keep SVPs housed separately from pre-trial detainees. Plaintiff's initial classification was based on the classification unit's lack of sufficient information related to Plaintiff's SVP status.  At the time Plaintiff was classified, the classification officer did not have information that Plaintiff was a pre-trial SVP.  Plaintiff's initial classification and housing in MSEG-AJ1A was not done for a punitive purpose.

On August 29, 2005, Plaintiff appeared in front of Superior Court Judge Gary Austin, who denied Plaintiff's writ of habeas corpus without prejudice, and ordered that Plaintiff be housed pursuant to Penal Code §§4002(b) and 1610.  There is no evidence that the FCJ classification unit found out about Plaintiff's SVP status until September 5, 2005.  On September 5, 2005, after the classification unit received knowledge of Plaintiff's SVP status, Plaintiff was re-classified from MSEG-AJ1A to Isolation.  Plaintiff's reclassification was not done for a punitive purpose.  Isolation is not a disciplinary cell area at the FCJ but merely

a housing location.    During the relevant time period, the FCJ had no specific section for SVPs.  The FCJ had an area for ordinary civil detainees, but the FCJ did not house SVPs with ordinary civil detainees because of safety issues.  If there was no compatible cell mate for an SVP, the SVP would be housed in Isolation because of FCJ's policy against wasting bed space.   Housing in Isolation was the only option available at the time.   On September 18, 2005, Plaintiff was re-classified from Isolation to MSEG-MJ3A4, a two man cell.   Plaintiff's re-classification was based on the fact the classification unit found another SVP, with whom Plaintiff was familiar (Rick Horn), who could be housed with Plaintiff.   Plaintiff had no objection to this arrangement.   Plaintiff remained housed with Mr. Horn in MSEG until he left the FCJ and returned to Atascadero.  At no time was Plaintiff housed in the general population of the FCJ.

On September 6, 2005, the Superior Court issued an order returning Plaintiff to Atascadero State Hospital.  On September 29, 2005, Plaintiff filed a grievance demanding that he be returned to Atascadero.   When informed that the FCJ staff was waiting for the hospital to notify them that it was ready to receive Plaintiff, Plaintiff withdrew his grievance.

On September 30, 2005, Plaintiff requested access to the FCJ's law library to work on an earlier civil rights case.  On October 5, 2005, Plaintiff was informed that he must be *in pro per* regarding the current criminal case for which he was in custody. On October 8, 2005, Plaintiff filed a grievance over the denial, which became moot when he was returned to Atascadero on October 11, 2005.

Plaintiff was not being treated as an SVP at the time of the subject incidents.   Plaintiff never requested any counseling while at the FCJ

1  during the relevant time period.  Plaintiff was rejecting treatment for
2  being an SVP.

3      During the relevant time period, defendant Sheriff Margaret Mims was
4  the Assistant Sheriff in charge of the Fresno County FCJ. Defendant Gary
5  Johnson was a Lieutenant at the County FCJ who oversaw inmate
6  classification.  Plaintiff is suing Sheriff Mims and Gary Johnson in
7  their individual capacities. Neither Defendant had any direct involvement
8  with Plaintiff's stay at the FCJ.

9                          **LEGAL STANDARD OF REVIEW**

10     A court must grant summary judgment if the pleadings and supporting
11  documents, viewed in the light most favorable to the non-moving party,
12  "show that there is no genuine issue as to any material fact and that the
13  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
14  56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
15  Under summary judgment practice, the moving party bears the initial
16  responsibility of presenting the basis for its motion and identifying
17  those portions of the record, together with affidavits, which it believes
18  demonstrate the absence of a genuine issue of material fact.  *Celotex*,
19  477 U.S. at 323.

20     If the moving party meets its initial responsibility, the burden
21  then shifts to the opposing party who must demonstrate the existence of
22  a factual dispute and that the fact in contention is material, i.e., a
23  fact that might affect the outcome of the suit under the governing law,
24  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the
25  dispute is genuine, i.e., the evidence is such that a reasonable jury
26  could return a verdict for the non-moving party.  *Id.* at 250; *see Triton
27  Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Rule
28  56(e) compels the non-moving party to "set out specific facts showing a

genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

## DISCUSSION

### I.   County Defendants

#### A.   Visual Body-Cavity Search

When the strip searches took place, Plaintiff's status was that of someone awaiting civil commitment proceedings. Civil commitment proceedings were pending against him under California's Sexually Violent

Predators Act (SVP), Cal. Welf. & Inst.Code §§ 6600-6609.3.  The search occurred at the medical processing area in the FCJ after Plaintiff was transported in a vehicle with other prisoners from Atascadero to the FCJ, with several stops inbetween.

Based on the uncontroverted facts, this Court must make an initial determination whether, under the facts as viewed in a light most favorable to Plaintiff, subjecting Plaintiff to a strip search that included a visual body-cavity search when he arrived at the FCJ after transport with other prisoners from Atascadero violated his constitutional rights.  A strip search that includes a visual body-cavity search complies with the requirement of the Fourth Amendment so long as it is reasonable. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)(holding that visual body-cavity searches after every contact visit with a person from outside of the institution constitutional).  Here, County Defendants maintain that the search of Plaintiff upon his arrival was reasonable based on the FCJ's legitimate security interests.  Plaintiff's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation.  The manner and place in which Plaintiff was strip-searched were reasonable. There was no physical touching by the guards and the searches were done in a holding cell. There was no evidence that the searches were observed by any other detainees or by staff members of the opposite sex. There also was no evidence that the searches were done in a menacing manner.

The justification for the policy is the critical inquiry in the reasonableness equation. *See Way v. County of Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006). A policy is not "constitutionally acceptable simply by virtue of FCJ officials' invocation of security concerns.... Rather,

1  the policy must be 'reasonably related' to the [detention facility's]
2  interest in maintaining security." *Id.* (citations omitted). Defendants
3  here have invoked FCJ security as the basis for the search policy. The
4  Court considers whether the policy of strip-searching everyone who had
5  been in contact with outsiders or outside of the FCJ upon his return to
6  the facility or housing unit was, in actuality, reasonably related to the
7  Sheriff's interest in maintaining security.

8         The most important factor in the analysis is that Plaintiff had been
9  outside the physical confines of the FCJ just before he was searched. His
10  contacts with the outside world provided him with opportunities to obtain
11  contraband before he entered the FCJ from Atascadero. The existence of
12  these opportunities to obtain contraband provided a legitimate basis for
13  application of Defendants' strip-search policy to Plaintiff. The evidence
14  is undisputed that detainees can and do attempt to bring contraband into
15  the FCJ.

16         The Court finds Plaintiff has failed to create a genuine issue of
17  material fact as to whether he suffered a violation of a constitutional
18  right when he was searched.  The search was conducted pursuant to a
19  policy requiring all inmates who has been outside of the facility to be
20  strip searched and visually inspected upon their arrival.  The evidence
21  is undisputed that Plaintiff was transferred from Atascadero State
22  Hospital and that individuals arriving from state detention facilities
23  attempt to smuggle contraband and weapons.  Here, County Defendants
24  employed a search policy designed to protect both the legitimate security
25  interests threatened by such smuggling and the privacy interests of the
26  individual being searched. *Bull v. City and County of San Francisco,*
27  *—F.3d—, 2010 WL 431790 (9th Cir. 2010); see also Sundquist v. Philip*, 2008
28  WL 859452 (N.D. Cal. 2008), affirmed, 2009 WL 2353267 (9th Cir. 2009).

This Court will adhere to the Supreme Court's directive not to substitute its judgment for that of corrections facility officials. *Bell*, 441 U.S. at 540 n. 23.   County Defendants are entitled to summary judgment in their favor on this claim.

**B.  Classification**

Plaintiff claims County Defendants violated his right to due process by housing him with penal detainees and/or prisoners at the FCJ. Defendants do not dispute that Plaintiff was housed with penal detainees and/or prisoners; they argue they are entitled to summary judgment because the evidence shows they had legitimate, non-punitive interests justifying Plaintiff's conditions of confinement, and that the restrictions imposed on Plaintiff were not excessive in relation to those interests.

The Fourteenth Amendment applies to conditions of confinement claims brought by individuals who have not been convicted of a crime. *Jones v. Blanas,* 393 F.3d 918, 931 (9th Cir. 2004). Consequently, individuals detained on criminal charges may not be subjected to conditions that amount to punishment prior to an adjudication of guilt. *Id.* Further, individuals who are awaiting civil commitment proceedings are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime. *Jones,* 393 F.3d at 931-32.

In short, at a minimum, individuals detained under civil process but not yet committed cannot be subjected to conditions that amount to punishment, *id.* at 932. Punitive conditions may be shown where challenged restrictions are expressly intended to punish, where they are excessive in relation to a non-punitive purpose, or where they are employed to achieve objectives that could be accomplished by alternative and less

harsh methods. *Jones,* 393 F.3d at 932. Additionally, a presumption of punitive conditions of confinement applies when an individual awaiting adjudication as an SVP is confined "in conditions identical to, similar to, or more restrictive than those in which his criminal counterparts are held," *id.,* or "in conditions more restrictive than those the individual would face following SVPA commitment," *id.* at 933.

As noted, Plaintiff alleges he was subjected to punitive conditions of confinement because he was housed with penal detainees and/or prisoners during his temporary confinement at the FCJ. Because the record is unclear, the Court in an abundance of caution assumes, *arguendo,* that Plaintiff was not serving a term of civil commitment when he arrived at the FCJ, but was a civil detainee awaiting final adjudication as an SVP; consequently, the Court will apply to Plaintiff's claims the presumption of punitive conditions of confinement set forth in *Jones.* Under this standard plaintiff could not be subjected to more restrictive conditions than those imposed on an individual already committed as an SVP.

The *Jones* presumption is a rebuttable one; when such a presumption arises, the defendant must be given an opportunity to show that legitimate, non-punitive interests justified the conditions to which an SVP was subjected and that the restrictions imposed upon the SVP were not excessive in relation to those interests. *Id.* Here, Defendants assert they had legitimate, non-punitive interests justifying Plaintiff's placement in the FCJ protective-custody housing unit and that the restrictions imposed upon Plaintiff while he was housed in protective custody were not excessive in relation to those interests. In support of Defendants' argument, Gary Johnson, the Classifications Officer for the FCJ, offered evidence as to the manner in which housing decisions were made for FCJ inmates in general, and how the decision as to Plaintiff's

housing, in particular, was made. (Doc. No. 99-7.) Further, there were no alternative and less harsh methods that could have been employed because the FCJ did not have a separate area for SVP and SVPs were not able to be housed with ordinary civil detainees.

The Court finds County defendants have produced evidence sufficient to rebut the presumption that the conditions of confinement to which Plaintiff was subjected in the FCJ were punitive and that Plaintiff has failed to carry his burden of demonstrating a genuine issue of material fact with respect thereto. Plaintiff's sole argument is that, as a matter of law, Defendants violated his constitutional rights because he was not housed in a non-FCJ facility; in other words, he claims that the incarceration of SVPs with those who are facing or have been convicted of criminal charges is unconstitutional *per se.* Plaintiff does not cite to, nor is this Court aware of, any United States Supreme Court or Ninth Circuit case that so holds. Rather, the case law to date leads to the conclusion that there is no *per se* prohibition on housing SVPs in facilities where criminal detainees or convicts are also housed. *Seling v. Young,* 531 U.S. 250 (2001); *Jones v. Blanas,* 393 F.3d at 932; *Munoz v. Klender,* 208 F.Supp.2d 1125 (S.D.Cal.2002) ("the need to safely produce dangerous detainees for judicial proceedings and associated logistical challenges support the use of local law enforcement detention facilities for that purpose and do not run afoul of any constitutional right [plaintiff] has identified." *Munoz,* 208 F.Supp.2d at 1144.)

In sum, County Defendants have produced evidence sufficient to rebut the presumption that the conditions of Plaintiff's confinement at the FCJ were punitive, and Plaintiff has not carried his burden of producing evidence that creates a genuine issue of material fact with respect thereto. Plaintiff failed to demonstrate a triable issue as to whether

the conditions of his confinement were excessive in relation to the municipal government's legitimate non-punitive interests in security and effective facility management.  *Jones*, 393 F.3d at 932-35. Accordingly, County Defendants are entitled to summary judgment on Plaintiff's due process claim.

### C.  Lack of Treatment

Plaintiff claims that he was deprived of due process based on lack of treatment.  Pen. Code Section 4002 (and Section 1610) requires that persons subject to SVP proceedings held in county detention facilities **to the extent possible** should continue their course of treatment, if any. At the time Plaintiff was confined in the FCJ - as best as the Court can discern - he was going through the process of SVP adjudication. In fact, the uncontroverted facts are that Plaintiff was contesting being determined to be a SVP and continually refused sex offender treatment, according to Plaintiff's own deposition.

In addition, the Court finds persuasive the reasoning of other district courts that have addressed the question and found that individuals facing commitment under the SVP Act are not similarly situated to those detained under the LPS Act. *See Munoz v. Kolender,* 208 F.Supp.2d 1125, 1136 & n. 8 (S.D.Cal. 2002) (distinguishing SVP from LPS Act and other California involuntary confinement statutes; finding persons committed under SVP and LPS Act are not similarly situated).

This argument lacks merit.

### D.  Access-to-Law-Library Claim

The uncontroverted facts surrounding Plaintiff's request to have access to the law library support a finding that he suffered no actual prejudice as the result of the denial to allow Plaintiff to work on an unrelated civil rights case, rather than an ongoing criminal case.

The right of meaningful access to the courts prohibits state officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey,* 518 U.S. 343, 350 (1996). However, the right "guarantees no particular [means to assist inmates in the preparation and filing of legal papers] but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356-57.

To establish that he was denied meaningful access to the courts, a plaintiff must submit evidence showing that he suffered an "actual injury" as a result of the defendants' actions. *Id.* at 348. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the conduct of the defendants prevented him from bringing to court a nonfrivolous claim that he wished to present. *Id.* at 352-53. That nonfrivolous claim must be a direct or collateral attack on the inmate's sentence, or a challenge to the conditions of his confinement. *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

In their moving papers, County Defendants offered uncontroverted evidence that Plaintiff's request to access the law library was denied because he represented that he was going to work on a civil rights action, not the criminal case that provided the basis for his stay at the FCJ. In his Opposition, Plaintiff makes no attempt to dispute this evidence, and offers no authority supporting this claim. The restriction imposed by the FCJ is reasonable, as "limiting law library access is inherent in managing a limited resource for a large group of individuals who all want to use

it, ..." *Halbert v. Herbert*, 2008 WL 4460213, p. 5 (N.D. 2008).
Furthermore, Plaintiff has not identified any actual prejudice. *Maine v. Moulton,* 474 U.S. 159, 170 (1985). Accordingly, this claim has no merit.

**E.   No link between County Defendants and Alleged Conduct**

Finally, neither County Defendant has been factually linked to the the conduct alleged by Plaintiff to be wrongful. Plaintiff must prove that each of the individual defendants personally participated in the alleged constitutional violations. *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). As to Sheriff Mims, while she was the Assistant Sheriff in charge of the FCJ facility, she had no involvement whatsoever with Plaintiff's stay at the FCJ. While Gary Johnson was a lieutenant at the FCJ who oversaw inmate classification, he did not make any decision, or take any action, related to Plaintiff.

To plead an individual capacity claim against a supervisor in a Section 1983 case, a plaintiff must show (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Here, no facts are alleged supporting a connection between any of the conduct on the part of the County Defendants and any alleged constitutional injury. As such, it cannot be concluded that either Defendant set in motion a series of acts that they knew or should have known would cause others to inflict a constitutional injury. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Plaintiff offers no evidence to raise a triable issue of fact as to the lack of involvement of both Sheriff Mims and Lieutenant Johnson.

Plaintiff claims that he "has sufficiently alleged that the constitutional violations he suffered were 'set in motion' by Defendants'

- 18 -

policy decisions, or at the very least, that Defendants knew of these abuses and demonstrated a deliberate indifference to the Plaintiff's plight." To this end, Plaintiff contends that when Sheriff Mims was the Assistant Sheriff and in charge of the detentions bureau, "she was empowered with the authority to effectuate policies and procedures within the facility." It is true that civil rights liability can be imposed against a municipality for injuries inflicted pursuant to a governmental "policy or custom." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). However, the County of Fresno is not a defendant, and there is no official capacity claim against Sheriff Mims (or Lieutenant Johnson). Therefore, Sheriff Mims cannot be liable for an alleged unconstitutional policy or custom. Furthermore, Plaintiff has offered no evidence that Sheriff Mims effectuated any policies or procedures related to inmate classification when she was Assistant Sheriff. While Plaintiff contends that Sheriff Mims "directed the personnel under her direct supervision," he offers no evidence that Sheriff Mims "directed" any person to take any action related to Plaintiff's stay at the FCJ. Therefore, there is no evidence that Sheriff Mims participated in any wrongful actions, directed any wrongful actions, or knew that the wrongful actions were taking place and failed to prevent them.

Plaintiff has also offered no evidence to support a claim against Lieutenant Johnson. While Plaintiff concludes that Lieutenant Johnson "was delegated with sufficient authority in the enforcement of the Classification process to incur tort liability in this action," he has offered no evidence that Lieutenant Johnson had any direct or indirect involvement in the alleged wrongful actions. Plaintiff has also offered no evidence of any policies put in place by Lieutenant Johnson that led to his alleged injuries. Furthermore, even assuming that Lieutenant

Johnson promulgated any such policies, the fact that Plaintiff was initially classified as a pre-trial detainee was based on a lack of sufficient information, not a policy or custom.

Plaintiff makes several references in his Opposition brief to the acts or omissions of County Defendants "agents." However, a municipality cannot be held liable under § 1983 simply on the basis of *respondeat superior*. *Monell,* 436 U.S. at 691.

## II.   Transport Company Defendants

### A.   Transport to FCJ

Generally Plaintiff alleges that the individual Transport Defendants violated his due process rights by housing him with criminal detainees during the transport from Atascadero State Hospital to FCJ. Defendants presented uncontroverted evidence that they had no control over these conditions. *See Harper v. City of L.A.,* 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must ... demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). Further, Plaintiff failed to demonstrate a triable issue as to whether the conditions of his transportation were excessive in relation to the legitimate, non-punitive interests of the Transport Defendants and the government in safety and effective management of its transportation services. *Jones,* 393 F.3d at 932-35.

Plaintiff's argument perseverates on whether or not the Defendants were in possession of the August 12, 2005 Order from the Fresno Superior Court prior to transport.  The August 12, 2005 Order merely stated that Plaintiff was to be "administratively segregated and treated as required by the California Penal Code §§4002(b) and 1610." Defendants maintain that neither section 1610 nor section 4002 required Plaintiff to be separated from other individuals outside of the FCJ and during secure vehicular

transports between correctional facilities. Plaintiff has failed to refute this argument.

The uncontroverted facts support Defendants' explanation that the interior design of Transcor vehicles allows for limited segregation of individuals via compartments separated by metal walls. While most individuals are placed in a larger seating area, there are one or two smaller compartments which have the capacity to seat one to three persons. The exact arrangement of the persons being transported on a given journey is based upon the determination of how to best maintain the security and safety of all occupants of the vehicle. Male and female prisoners are always segregated from one another and never placed in the same compartment of the vehicle. While the individuals are being transported, they are restrained so as to prevent a person from being able to physically harm another person. Also, the use of restraints is necessary in order to ensure that employees of Transcor are able to maintain control over the transported individuals while the vehicle is traveling to its destination, since there are more individuals being transported than employees of Transcor present in the vehicle. The use of restraints prevents the transported individuals from committing acts of violence towards each other by limiting the range of their physical movement through the use of handcuffs and other approved restraining devices. When a request is received from the State of California to move an individual from one facility to another, neither Transcor nor its employees are provided with any information regarding the nature of a person's crime or reason for detention unless such information is necessary for safety and/or security purposes.

In his Complaint, Plaintiff asserts that transporting him in a van in which he was not segregated from penal detainees and/or prisoners is

per se unconstitutional, but he points to no case authority supporting such an assertion. The Transport Defendants argue they did not violate Plaintiff's constitutional rights because cases establishing the due process requirements applicable to an SVP's conditions of confinement do not apply to an SVP's claim based on the manner in which he was transported from one location to another. Additionally, Transport Defendants argue that they did not violate Plaintiff's constitutional rights because legitimate, non-punitive interests justified the conditions to which Plaintiff was subjected when he was transported, and the restrictions imposed upon Plaintiff were not excessive in relation to those interests. *See Jones,* 393 F.3d at 934.

Plaintiff has pointed to no case, and the Court is aware of none, that holds transporting SVPs, or other civilly detained individuals, under conditions in which they are not segregated from persons charged with or convicted of crimes is unconstitutional *per se.* There exists some support for the proposition that an SVP plaintiff could state a claim for the violation of his constitutional right to personal security were he to allege facts showing he was injured by criminal detainees while being transported, *see Bacon v. Kolender,* 2007 WL 2669541, *12 (S.D.Cal. Sept. 6, 2007). Here, however, Plaintiff makes no such allegations, nor can the inference of such constitutional injury be drawn from his single allegation that he was transported in a van where he "was not segregated from the Penal Detainees/Prisoners that were already present in the vehicle."

In particular, Defendants point out, *Jones* addressed a claim concerning conditions of confinement incident to the housing of SVPs; specifically, whether housing an SVP pursuant to California Penal Code

§§ 4001 and 4002(a) constituted punitive conditions of confinement. *See Jones,* 393 F.3d at 923, 934. Thus, Defendants argue, the matter of transportation simply was not at issue in the *Jones* case. Accordingly, there is no case law expressly supporting Plaintiff's argument that the manner in which he was transported was unconstitutional.

Finally, even if the presumption of punishment established in *Jones* applies to transportation claims brought by an individual such as Plaintiff who is awaiting adjudication as an SVP, Defendants argue they have rebutted the presumption of punitive conditions by showing that legitimate, non-punitive interests justified the conditions to which Plaintiff was subjected when he was transported, and that the restrictions imposed upon Plaintiff were not excessive in relation to those interests. *See Jones,* 393 F.3d at 934. The Court finds that the Transport Defendants have rebutted the presumption of punitive conditions by producing undisputed evidence showing that the individual employees used their professional judgment in determining where Plaintiff would be seated in the van, based on the need to maintain the security and safety of all of the van occupants, and that Plaintiff was not subjected to restrictions that were excessive in relation to Defendants' legitimate security concerns.

It is unclear exactly what Plaintiff's complaint with reference to the Transport Defendants is: whether he was too confined and therefore he was "punished" or that he was not safe because he was not separated from the others. If Plaintiff is claiming the Transport Defendants were jeopardizing his safety, he must allege more than a generalized fear. The threat must be objectively serious and the standards for pretrial detainees are the same as for prisoners.

To prevail on a claim under the Eighth Amendment for a threat to health and safety, a prisoner must demonstrate deliberate indifference to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Eighth Amendment liability requires "more than ordinary lack of due care," in other words, the inmate must show more than negligence. *Id.* at 835. A plaintiff must show a "substantial risk of serious harm"—the risk must be objectively sufficiently serious. *Id.* at 834. In addition, the defendant official must have a sufficiently culpable state of mind; that is, he must be deliberately indifferent. *Id.*

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. However, the inmate need not show that the defendant acted or failed to act believing that harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Whether the official had the necessary knowledge is a question of fact; it may be demonstrated in the usual ways, including inferences drawn from circumstantial evidence, "and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*[3]

In sum, when the facts alleged by Plaintiff are viewed in the light most favorable to him, the Court finds Plaintiff has not shown the violation of a constitutional right. *See McDade v. West,* 223 F.3d 1135, 1142 (9th Cir. 2000). Accordingly, as Plaintiff has not raised a genuine

---

[3]Plaintiff's complaint concerning "extreme heat" does not state a cognizable claim for relief. (Plaintiff's Opposition Brief at 6: Doc. No. 121.)

issue of material fact as to whether his constitutional rights were violated by the Transport Defendants, they are entitled to summary judgment on this claim.

### B. Placement in Holding Cell

Plaintiff claims Transport Defendants violated his constitutional rights when Plaintiff was dropped off at the FCJ where Plaintiff was placed in a holding cell. The Defendants argue that Plaintiff cannot establish any constitutional violation by them resulting from Plaintiff's conditions of confinement at the FCJ because he has not shown that Transport Defendants either had custody over Plaintiff or any authority over the conditions of his confinement at the time he was at the FCJ. These undisputed facts render this claim meritless as to the Transport Defendants.

### CONCLUSION

After review, this Court finds that no genuine issue as to any material fact precludes resolution of this action as a matter of law in favor of Defendants.  The uncontroverted fact is that Plaintiff was never injured or harmed or placed in harm's way in the course of his transport or brief stay with FCJ; none of the events involved punitive action against Plaintiff.  The other uncontroverted fact is that both the Transport Defendants and the County Defendants acted reasonably under the constraints of the situation: the transportation of multiple prisoners and detainees going to and from secure facilities with ample opportunity for things to go terribly wrong unless certain general security and safety measures are employed.  In this setting, there was no feasible way to treat Plaintiff differently from everybody else, with the clear understanding that as a SVP, Plaintiff presents his own security and

1  safety concerns. In sum, the Court unqualifiedly finds that Plaintiff's
2  constitutional rights were not violated.

3       Accordingly,

4       **IT IS ORDERED** that the Clerk's Office is directed to correct the
5  description of the following docket number: Doc. No. 100 should reflect
6  that it is a Request for Judicial Notice by Transport Defendants not a
7  Motion for Summary Judgment. Defendants' unopposed Requests for Judicial
8  Notice (Doc. Nos. 96, 100, 101, 102) are **granted** pursuant to Fed.R.Evid.
9  201.

10      **IT IS FURTHER ORDERED** that the County Defendants' Motion for Summary
11 Judgment (Doc. No. 99) is **granted**; the Transport Defendants' Motion for
12 Summary Judgment (Doc. No. 98) is **granted**; and, the Plaintiff's Motion of
13 Summary Judgment (Doc. No. 90) is **denied**.

14      **IT IS FURTHER ORDERED** that this action is **terminated and closed**.
15 The Clerk's Office is directed to enter a Final Judgment conforming to
16 this Order.

17      DATED this 23rd day of March, 2010.

18
19
20
21                          David C. Bury
22                    United States District Judge
23
24
25
26
27
28