1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF CALIFORNIA**

7

8  William Jackson Kitchens,        )    CV-05-1567-DCB    P
                                    )
9             Plaintiff,            )    **ORDER**
                                    )
10 vs.                              )
                                    )
11                                  )
   Margaret Mims, et al.,           )
12                                  )
             Defendants.            )
13 _____ )
                                    )
14

15      Before the Court are the Plaintiff's Motion for Summary Judgment and

16 Defendant Mims' Cross Motion for Summary Judgment[1] or in the alternative

17 Summary Adjudication.

18      On March 25, 2010, this Court entered an Order and Judgment granting

19 Defendants' motions for summary judgment and denying Plaintiff's motion

20 for summary judgment.  Plaintiff appealed and the Ninth Circuit Court of

21 Appeals, on January 14, 2014, affirmed this Court's ruling with reference

22 to Defendant's Johnson and the Transportation Defendants, but reversed

23 on the Mims' ruling, specifically, as follows:

24      Kitchens' detention in Isolation reveals conditions that are
        substantially worse than those of the criminal detainees in
25      administrative segregation, giving rise to a presumption of

26  _____

27      [1]This motion was filed during the pendency of the appeal. After the
   Mandate issued, this Court entered an Order requiring Defendant to file
28 a response to the pending motion. Defendant Mims also filed a cross
   motion. This Court then entered the appropriate pro se warning order.

1     punishment.  The County Defendants failed to rebut this
presumption because they have proffered only generalized jail
2     management  concerns  for  support...Because  the  County
Defendants failed to proffer evidence to rebut the presumption
3     of punishment, summary judgment in their favor was improper.
They may produce additional evidence to rebut the presumption
4     on remand."

5  (Appeal No. 10-15737 at 78-3.)  In addition,

6     Because no policy from "higher authority" specified how SVPs
housed in Isolation or the Hole must be treated, a question of
7     material fact exists as to Mims' authority to effect the
conditions  afforded  to  SVPs  in  those  locations.   In
8     particular, the issue is whether in the absence of a policy,
Mims, as the person who "oversaw jail operations:" and "in
9     charge of the Fresno County Jail," had the authority to ensure
the SVPs would be afforded better conditions than others
10    housed in Isolation or the Hole.  A reasonable trier of fact
could conclude that she controlled Kitchens' circumstances of
11    confinement and is thus potentially liable under a supervisor
theory of liability.
12
(Appeal No. 10-15737 at 78-4-5.)
13
    This Court will now address these remaining issue with reference to
14
the remaining Defendant, Mims.  All other issues[2] have been resolved and
15
will not be addressed in this Order.
16
**PROCEDURAL BACKGROUND**
17
    The Court will adopt the Defendants' recitation of the procedural
18
background in part, as follows:
19
20    Plaintiff, a civil detainee appearing *in propria persona*,
filed his initial complaint on December 5,2005. *Doc. No. 1*. In
21    the complaint, Plaintiff set forth civil rights claims
pursuant to 42 U.S.C. § 1983 based on his stay at the Fresno
22    County Jail ("Jail") between August 25, 2005, and October 11,
2005.

23    Plaintiff alleges that as a pre-trial civil detainee pursuant
to California's Sexually Violent Predator("SVP") laws, he was
24    improperly classified and housed at the Jail. Plaintiff also
alleges he was subjected to an improper visual body cavity
25    search, denied access to the Jail's law library, and was
denied mental health treatment.
26

27        [2]Plaintiff attempts to reassert the following issues that have
28  previously been resolved: library access, treatment access, strip search,
conditions of transport.

1

2      On August 5, 2008, Plaintiff filed his First Amended
       Complaint. *Doc. No. 75.* On August 26, 2008, Defendant Mims
3      filed her Answer. *Doc. No. 78.* On March 9, 2009, Plaintiff
       filed a Motion for Summary Judgment. *Doc. No. 90.* On June 15,
4      2009, Defendant Mims filed her Motion for Summary Judgment.
       *Doc. Nos. 99, 101.* On the same day, Defendant Mims filed her
5      opposition to Plaintiff's Motion for Summary Judgment. *Doc.*
       *No. 95.*

6      On July 3, 2009, Defendant Mims was served with a brief in
       opposition to her Motion for Summary Judgment. However, the
7      brief was not filed with the court. On July 6, 2009, Plaintiff
       filed a reply to Defendant Mims' opposition to his Motion for
8      Summary Judgment. *Doc. No. 110.* The next day, this Court
       issued an order directing Plaintiff to file an opposition to
9      Defendant Mims' Motion for Summary Judgment. *Doc. No. 111.* On
       July 13, 2009, an order was issued directing Plaintiff to
10     supplement his Motion for Summary Judgment with missing
       exhibits. *Doc. No. 114.* On the same day, Plaintiff was ordered
11     to file an opposition to Defendant Mims' Motion for Summary
       Judgment by August 7, 2009. *Doc. No. 115.*

12
       On July 21, 2009, Plaintiff filed a separate statement of
13     material facts in opposition to Defendant Mims' Motion for
       Summary Judgment. *Doc. No. 116.* However, the brief served on
14     Defendant Mims was not filed. On August 13, 2009, Defendant
       Mims filed her reply papers. *Doc. No. 122.* Attached to Defense
15     counsel's declaration was a copy of Plaintiff's unfiled
       opposition brief. The matter was taken under submission
16     without a hearing.

17     On March 25, 2010, this Court issued a single order on the
       three pending motions for summary judgment. *Doc. No. 124.*
18     Defendant Mims' Motion for Summary Judgment was granted, as
       was the motion of former co-defendants Transcor America.
19     Plaintiff's Motion for Summary Judgment was denied. Plaintiff
       timely filed an appeal of the Court's order.

20
   (DMSJ at 4.)
21
       On June 14, 2013, the Ninth Circuit Court of Appeals affirmed the
22
   district court's summary judgment in favor of Defendant Johnson and the
23
   Transportation Defendants and reversed the district court's summary
24
   judgment with respect to Defendant Mims. (Memorandum, No.10-15737.) On
25
   January 14, 2014, the Ninth Circuit panel voted to deny the petition for
26
   panel rehearing (2-1)(Judge Wallace dissented and recommended an en banc
27
   rehearing on the issue of Defendant Mims). (Order Amending Memorandum,
28
   10-15737). An Amended Memorandum was filed January 14, 2014 and the

                                    - 3 -

1   Mandate issued February 4, 2014.  The Ninth Circuit, reversed the Court's
2   order granting Defendant Mims' Motion for Summary Judgment on the grounds
3   "[a] reasonable trier of fact could conclude that she controlled
4   [Plaintiff's] circumstances of confinement and is thus potentially liable
5   under a supervisor theory of liability." *Kitchens v. Pierce*, 2014 WL
6   812896, *5 (9th Cir. 2014). In particular, the issue was whether
7   Defendant Mims possessed final policy making authority over the policies
8   and/or procedures governing the privileges provided to SVP detainees at
9   the Jail. The Ninth Circuit also held that Defendant Mims could produce
10  additional evidence to rebut the presumption of punishment on remand. *Id.*
11  at *5.

12      While the Ninth Circuit appeal was pending, on July 30, 2013,
13  Plaintiff filed another motion for summary judgment (PMSJ). (Doc. 136.)
14  On April 14, 2014, after the Ninth Circuit issued its decision, this
15  Court ordered Defendant Mims to respond to Plaintiff's motion for summary
16  judgment by May 29, 2014. On May 29, 2014, Defendant Mims filed an
17  Opposition (Doc. 145) and a Request for Judicial Notice (Doc. 146).  On
18  May 30, 2014, Defendant Mims filed a cross motion for summary judgment
19  (DMSJ). (Doc. 147.)  This Court then entered the requisite pro se warning
20  order. (Doc. 148.)  Plaintiff filed an Opposition and a Reply on July 11,
21  2014. (Doc. 149, 150.)  On July 14, 2014, Defendand Mims filed an
22  Opposition and on July 31, 2014, Defendant Mims filed a Reply. (Docs.
23  151, 152) and a request to strike Plaintiff's reply.

24                          **FACTUAL BACKGROUND**

25      On August 12, 2005, Fresno County Superior Court issued an order to
26  transport Plaintiff from Atascadero State Hospital to Gresno County Jail
27  for a court hearing regarding Plaintiff's legal status as a SVP.  On
28  August 25, 2005, Plaintiff was transported to Fresno County Jail.  On

1   August 26, 2005, Plaintiff was classified and housed in MSEGAJIA - 45-man
2   open dormitory area.  On August 29, 2005, Plaintiff made an appearance
3   in Superior Court, where the judge ordered in continued detention as a
4   SVP.  On September 5, 2005, Plaintiff was reclassified and placed in
5   Isolation.  On September 18, 2005, Plaintiff was again reclassified and
6   placed in a two man cell.  Plaintiff was returned to Atascadero Hospital
7   on October 11, 2005.  During this time, Defendant Mims was an Assistant
8   Sheriff assigned to Fresno County Jail.  It is Plaintiff's time in
9   Isolation from September 5 - 18, 2005 (14 days) that raises the question
10  of punishment.  And, the treatment of SVPs while housed in Isolation is
11  the question with reference to Defendant Mims authority to control the
12  conditions in Isolation:  Did Mims have the authority to ensure that
13  SVP's would be afforded better conditions than others housed in
14  Isolation?

**STANDARD OF REVIEW**

16      A court must grant summary judgment "if the movant shows that there
17  is no genuine dispute as to any material fact and the movant is entitled
18  to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*
19  *Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the
20  initial responsibility of presenting the basis for its motion and
21  identifying those portions of the record, together with affidavits, that
22  it believes demonstrate the absence of a genuine issue of material fact.
23  *Celotex*, 477 U.S. at 323.

24      If the movant fails to carry its initial burden of production, the
25  nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd.*
26  *v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the
27  movant meets its initial responsibility, the burden shifts to the
28  nonmovant to demonstrate the existence of a factual dispute and that the

fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

Before the Court are cross-motions for summary judgment. Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require the court to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.   Fed.R.Civ.P. 56(c).

## DISCUSSION

**A. Punishment**

"'[W]hen a SVPA detainee is confined in conditions identical to, similar to, or more restrictive that those in which his criminal counterparts are held, we presume that the detainee is being subjected

to "punishment." *Jones v. Blanas,* 393 F.2d 918, 932 (9th Cir. 2004). Second, 'when an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment, we presume the treatment is punitive.' *Id.,* at 933. To rebut these presumptions, Defendants may establish that retaining Plaintiff in T-Sep served legitimate, non-punitive justifications. *Id.* However, Defendants also have the burden of showing that retaining Plaintiff in T-Sep was not excessive in relation to the legitimate, non-punitive objective and why this purpose could not have been met by alternative and less harsh methods. *Id.,* at 934-35." *Cerniglia v. County of Sacramento*, 2008 WL 1787855, *8 (E.D. Cal. 2008). Here, Plaintiff was previously adjudicated a SVP.

   **1.  Classification and Housing at Fresno County Jail**

   On August 26, 2005, Plaintiff was classified and housed in MSEG-AJ1A, a 45-man open dormitory area at the annex jail that contained detainees who had been charged or were being prosecuted for sex offenses. *UMF No. 27-28*.[3] At the time, no one at the Jail knew that Plaintiff was a civil detainee. *UMF No. 29*. MSEG-AJ1A contained bunk beds, television, coffee, a telephone area, and access to an exercise area. *UMF No. 30*. It was the policy and practice of the Jail to keep SVP's housed separately from pre-trial detainees. *UMF No. 31*. Plaintiff's initial classification was based on the classification unit's lack of sufficient information related to Plaintiff's SVP status. *UMF No. 32*. At the time Plaintiff was classified, the classification officer did not have information that Plaintiff was a pre-trial SVP. *UMF Nos. 33-38*.

   Plaintiff's initial classification and housing in MSEG-AJ1A was not done for a punitive purpose. *UMF No. 39*. Plaintiff had more privileges

---

[3]Defendant's undisputed material facts (UMF).  (Doc. 145-1.)

in MSEG-AJ1A than he had when he was properly housed as an SVP. *UMF No. 40.*

### 2. Plaintiff's Re-Classification

On August 29, 2005, Plaintiff appeared in front of Superior Court Judge Gary Austin, who denied his writ of habeas corpus without prejudice, and ordered that Plaintiff be housed pursuant to Penal Code §§4002(b) and 1610. *UMF No. 41.* There is no evidence that the Jail classification unit found out about Plaintiff's SVP status until September 5, 2005. *UMF No. 42.* On September 5, 2005, after the classification unit received knowledge of Plaintiff's SVP status, Plaintiff was re-classified from MSEGAJ1A to Isolation. *UMF No. 43.*

The Fresno County Jail did not have a separate housing unit for individuals civilly committed as SVP's and/or individuals awaiting civil commitment as SVP's. *UMF No. 44.* The Jail had a housing unit for ordinary civil detainees; however, pursuant to California law, it was the policy of the Jail not to house SVP's with ordinary civil detainees. *UMF No. 45.* Pursuant to the laws of the State of California individuals civilly committed as SVP's and/or individuals awaiting civil commitment as SVP's were not housed together with, or permitted to be in the same room as, criminal inmates or inmates awaiting criminal process and/or civil detainees at the Fresno County Jail. *UMF No. 46*

The Fresno County Jail did not have a separate area, facility or location where individuals civilly committed as SVP's and/or individuals awaiting civil commitment as SVP's could safely and in compliance with the laws of the State of California receive the same privileges provided to civil detainees or criminal inmates housed in general population. *UMF No. 47.* Due to budgetary constraints, the Fresno County Jail did not have additional staffing available to provide civilly committed SVP's and/or individuals awaiting civil commitment as SVP's with the same

privileges provided to civil detainees or criminal inmates housed in general population. *UMF No. 48*.

In order to comply with the laws of the State of California individuals civilly committed as SVP's and/or individuals awaiting civil commitment as SVP's could only be housed in isolation or administrative segregation at the Fresno County Jail. *UMF No. 49*. Isolation is not a disciplinary cell area at the Jail, but merely a housing location for house alone/program alone inmates/detainees. *UMF No. 50*. Plaintiff's re-classification from MSEG-AJ1A to isolation was not done for a punitive purpose. *UMF No. 51*.

Individuals civilly committed as SVP's and/or individuals awaiting civil commitment as SVP's housed in isolation were provided with the same privileges as all individuals being housed in the isolation unit. *UMF No. 52*. Plaintiff was housed in administrative segregation in order to comply with the laws of the State of California requiring that individuals awaiting civil commitment as sexually violent predators cannot be housed and/or in the same room as criminal inmates, inmates awaiting criminal process and/or civil detainees. *UMF No. 53*. Plaintiff's housing in isolation was the only option available at the time. *UMF No. 54*.

**3.  Plaintiff's Second Re-Classification**

On September 18, 2005, Plaintiff was re-classified from Isolation to MSEG-MJ3A4, a two-man cell. *UMF Nos. 55-56*. Plaintiff's re-classification was based on the fact that the classification unit found another SVP with whom Plaintiff was familiar (Rick Horn) that could be housed with Plaintiff. *UMF No. 57*. Plaintiff had no objection to this arrangement. *UMF No. 58*. Plaintiff remained housed with Mr. Horn in MSEG until he left the Jail and returned to Atascadero. *UMF No. 59*. At no time was Plaintiff housed in the general population of the Jail. *UMF No. 60*. Plaintiff was housed in administrative segregation in order to comply

- 9 -

with the laws of the State of California requiring that individuals awaiting civil commitment as sexually violent predators cannot be housed and/or in the same room as criminal inmates, inmates awaiting criminal process and/or civil detainees. *UMF No. 61.* Plaintiff was not housed in administrative segregation for a punitive purpose. *UMF No. 62.* Plaintiff was provided the same privileges as all of the individuals housed in administrative segregation. *UMF No. 63.*

It is undisputed that the Jail, in compliance with the laws of the State of California had a policy of not housing SVP detainees, such as Plaintiff, with criminal or non-SVP civil detainees. *UMF Nos. 44-46.* As a result of this policy, on September 5, 2005, Plaintiff was re-classified and placed in the isolation housing unit with house alone/program alone inmates/detainees. *UMF No. 43.* On September 18, 2005, Plaintiff was re-classified from isolation to administrative segregation and housed with another SVP. *UMF Nos. 55-59.* Plaintiff's housing assignments were not punitive but rather were necessary based on the existing conditions at the Jail. *UMF Nos. 39; 61-63; Cal. Penal Code* §4002(a)-(b); *Jones v. Blanas,* 393 F.3d at 934-935.

At the time, there were no "alternative and less harsh methods" that reasonably could have been employed. The Jail did not have an additional facility or location where Plaintiff could have been held safely and in compliance with the laws of the State of California and receive the same privileges provided to civil detainees or criminal detainees housed in general population. *UMF Nos. 44; 47; 48; 61-63.* Even if the Jail had an additional area, facility or location, due to budgetary restraints, the Jail did not have additional staff to provide private or individualized security which would have been necessary to ensure Plaintiff's safety and as required by the laws of the State of California to prevent his interaction with criminal and/or civil detainees. *UMF No. 48; Peralta v.*

1  *Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). Instead, the only locations

2  available to house and safely provide SVP detainees with privileges was

3  either isolation for a single SVP detainee or administrative segregation

4  for two SVP detainees. *UMF Nos. 44; 47; 49; 54.* By law Plaintiff could

5  not have been housed with ordinary civil detainees. *UMF No. 45*; *Hubbart*

6  *v. Superior Court*, 19 Cal.4th 1138, 1168-70 (1999); *see also People v.*

7  *Green*, 79 Cal.App.4th 921, 924-927 (2000). As such, it is undisputed that

8  there was nothing punitive about Plaintiff's housing in isolation and/or

9  administrative segregation.[4]

10      The Court finds that the uncontradicted material facts support a

11  finding that Defendant has rebutted the presumption of a punitive purpose

12  and Plaintiff's treatment was not excessive in relation to Defendant's

13  legitimate, non-punitive objectives.

14  **B.  Mims' Supervisory and Policy Making Roll**

15      **1.  Rules, Regulations and Policies**

16      At all times relevant to this litigation, Defendant Mims was the

17  Assistant Sheriff responsible for the day-to-day operations of the Jail.

18  *UMF No. 5.* Prior to this lawsuit being filed, Defendant Mims had no

19  knowledge that Plaintiff was housed at the Fresno County Jail. *UMF No.*

20  *6.* Further, Defendant Mims had no direct or indirect involvement with any

21  decisions regarding Plaintiff's stay at the Jail. *UMF Nos. 7-15.* This

22  included where Plaintiff was housed; Plaintiff's privileges; or

---

24      [4]Plaintiff also contends that he should have been housed at a
different type of facility where the conditions of confinement are

25  generally more pleasant than a jail. However, Plaintiff ignores the fact
that he was ordered by the Fresno County Superior Court to be housed at

26  the Jail. The law recognizes that SVPs will be housed at jails for
limited periods of time while SVP proceedings are taking place. *Halbert*

27  *v. Herbert*, 2008 WL 4460213, *7 (N.D. Cal. 2008). Plaintiff's remedy in
this situation was to petition the Superior Court for an order changing

28  his confinement. *Cal. Penal Code* § 4002(b). He did not do so.

Plaintiff's classification. *Ibid*.

In 2005 and at all times relevant to this litigation, Defendant Mims did not possess final policy making authority over any of the policies and/or procedures governing the Fresno County Jail. *UMF No. 16*. Plaintiff has conceded that the Sheriff of the County of Fresno, not Defendant Mims was the policymaker at the relevant times. *UMF No. 17*.

At the relevant times, Defendant Mims was responsible only for implementing and enforcing the policies and procedures that were set forth by the Sheriff. *UMF No. 18*. Failure to implement and/or enforce the policies and procedure set forth by the Sheriff could result in either Defendant Mims' demotion or termination. *UMF No. 19*.

In 2005 and at all times relevant to this litigation, Defendant Mims did not possess final policy making authority over any of the following: (1) policies and/or procedures referring and/or relating to the housing of inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and/or civil detainees committed as SVP's at the Fresno County Jail (*UMF No. 20*); (2) policies and/or procedures referring and/or relating to the privileges provided to inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and/or civil detainees committed as SVP's at the Fresno County Jail (*UMF No. 21*); (3) policies and/or procedures referring and/or relating to the privileges not provided to inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and/or civil detainees committed as SVP's at the Fresno County Jail (*UMF No. 22*).

Pursuant to the laws of the State of California, the duly elected Sheriff of the County of Fresno was the only individual who possessed final policy making authority over the following: (1) policies and/or

procedures governing the Fresno County Jail (*UMF No. 23*); (2) policies and/or procedures referring and/or relating to the housing of inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and civil detainees committed as SVP's at the Fresno County Jail (*UMF No. 24*); (3) policies and/or procedures referring and/or relating to the privileges provided to inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and civil detainees committed as SVP's at the Fresno County Jail (*UMF No. 25*); (4) policies and/or procedures referring and/or relating to the privileges not provided to inmates awaiting criminal process, criminally convicted inmates, civil detainees, civil detainees awaiting commitment as SVP's and civil detainees committed as SVP's at the Fresno County Jail. *UMF No. 26.*

### 2.   No Admissible Evidence Establishing Supervisor Liability

Plaintiff has brought suit against Defendant Mims in her individual capacity as supervisor at the Jail. *Doc. No. 75*. As such, the central issue currently before the Court is whether Plaintiff presented sufficient undisputed material facts and admissible evidence to establish a valid claim of supervisor liability against Defendant Mims. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Hydrick v. Hunter*, 669 F.3d 937, 940 (9th Cir. 2012) (quoting *Iqbal v. Ashcroft*, 556 U.S. 662 (2009)). In order to plead an individual capacity claim against Defendant Mims pursuant to § 1983, Plaintiff must establish either (1) Defendant Mims was "personally involved in a constitutional violation, or (2) there was a 'sufficient causal connection' between [her] wrongful conduct and the constitutional violation." *Lacey v.*

*Maricopa County*, 649 F.3d 1118, 1136 (9th Cir. 2011).

Plaintiff must prove that Defendant Mims personally participated in the alleged constitutional violations. *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988); *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). "[P]ersonal involvement could include 'culpable action or inaction in the training, supervision, or control of ... subordinates, ... acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Lacey*, 649 F.3d at 1136. "[A] policy is a deliberate choice to follow a course of action 'made from among various alternatives by the official or officials responsible for establishing final *policy* with respect to the subject matter in question.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986).

Here, the subject matter in question is privileges afforded SVP's at the Jail. "The identification of policymaking officials is a question of state law." *St. Louis v. Paprotnik*, 485 U.S. 112, 124 (1988). In the State of California, the county sheriff is responsible for administering and operating all county jails. *Brandt v. Board of Supervisors*, 84 Cal.App.3d 598, 601 (1978), *County of Los Angeles v. Superior Court*, 68 Cal.App.4th 1166, 1175-76 (1998) and *Bougere v. County of Los Angeles*, 141 Cal.App.4th 237, 242 (2006)). The Legislature has provided county sheriffs with broad authority to manage county jails. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1190 (9th Cir. 2002).

Also, pursuant to statute, the county sheriff is the sole and exclusive authority to administer/operate the county jail. *Id.; Cal. Gov. Code* §§ 26605 & 26610 and *Cal. Pen. Code* § 4000. California Code of Regulations, Title 15, which governs the Jail, defines the facility/system administrator as "the sheriff, chief of police, chief probation officer, or other official charged by law with the

administration of a local detention facility/system." *Cal. Code Regs.*
*Tit. 15* §§ 1006 & 1010. As administrator, the county sheriff is
responsible for creating and implementing all policies regarding inmate
housing and segregation. *Cortez*, 294 F.3d at 1190; *Cal. Code Regs. Tit.
15* §§ 1050 & 1053. This also includes policies regarding segregating
inmates whose safety may be at risk. *Cal. Code Regs. Tit. 15* §§ 1052
&1053.

   In addition to housing, Title 15 governs the creation of policies
and procedures regarding privileges at a county jail. Pursuant to Title
15, the county sheriff is responsible for creating and implementing all
policies regarding privileges. *Cal. Code Regs. Tit. 15* §§ 1061-1072.
Also, the county sheriff is responsible for developing and publishing a
policies and procedures manual addressing all of the requirements of
Title 15; which shall be made available to all employees. *Cal. Code Regs.
Tit. 15* § 1029. The Ninth Circuit has long recognized and enforced these
statutes and precedent. *Cortez*, 294 F.3d at 1190.

   Thus, pursuant to California law and binding precedent, the Sheriff,
not Defendant Mims, was the only individual who possessed final policy
making authority regarding the housing of Plaintiff at the Jail. *UMF Nos.
16-26*. Also, the Sheriff, not Defendant Mims, was the sole individual
with final policy making authority regarding policies and/or procedures
governing the privileges provided to or not provided to Plaintiff while
he was staying at the Jail. *Ibid*. Therefore, the undisputed material
facts establish that Defendant Mims did not create nor have any final
policy making authority regarding the policies and/or procedures
governing Plaintiff's housing and/or privileges at the Jail.

   Plaintiff was required to present sufficient affirmative evidence
that would allow a rational finder of fact to find in his favor by a
preponderance of the evidence. *Anderson,* 477 U.S. at 254; *Mt. Healthy*

*City Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). Bald assertions, argument and theories are insufficient. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978). Plaintiff failed to meet this burden. Plaintiff bore the burden of demonstrating that the undisputed material facts establish that Defendant Mims possessed final policy making authority and that she created the specific policy which resulted in the alleged constitutional violation. *Pembaur*, 475 U.S. at 483-84; *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961-62 (9th Cir. 2010). As discussed above, Defendant Mims by law did not possess final policy making authority at the Jail. *UMF. Nos. 16-26*. Also, the record is wholly devoid of any admissible evidence negating the statutory mandate that the duly elected Sheriff of the County of Fresno was the only individual with final policy making authority at the jail. *Ibid*. In fact, Plaintiff previously conceded this issue. *UMF. No. 17*.

Plaintiff failed to present sufficient affirmative admissible evidence that would allow a rational finder of fact to find by a preponderance of the evidence that Defendant Mims possessed final policy making authority regarding the privileges provided to or not provided to Plaintiff at the Jail. Furthermore, the Ninth Circuit has long held that a supervising law enforcement officer cannot be held liable as a policymaker pursuant to section 1983 for merely being familiar with policies and procedures, and implementing said policies as required by their supervisor. *Edgerly*, 599 F.3d at 961-62. Thus, a plaintiff is required to present sufficient affirmative evidence establishing that the constitutional violation was the result of an official policy created by a policymaker who possessed final authority to create the policy. *Pembaur*, 475 U.S. at 483-84; *Waggy v. Spokane County Washington*, 594 F.3d

707, 713 (9th Cir. 2010).

Under the controlling law, a county sheriff is the final policymaker when acting in their role as administrator/operator of a county jail. *Streit v. County of Los Angeles*, 236 F.3d 552, 564-65 (9th Cir. 2001); *Cortez*, 294 F.3d at 1189-90; *Brandt*, 84 Cal.App.3d at 601; *County of Los Angeles*, 68 Cal.App.4th at 1175-76; *Bougere*, 141 Cal.App.4th at 242; *Cal. Gov. Code* § 26605; *Cal. Pen. Code* § 4000. Also, a county sheriff is required by law to create all policies regarding privileges at a county jail. *Cal. Code Regs., tit. 15* §§ 1006 &1061-1072.

Defendant Mims by law did not possess any policy making authority; rather, she was required to enforce the policies and procedures regarding housing and/or privileges set forth by the Sheriff. *UMF. Nos. 16-19*. Defendant Mims was responsible only for the day-to-day operations of the Jail. *UMF No. 5*. Also, failure to implement and/or enforce the policies and procedures created by the Sheriff could have resulted in Defendant Mims being demoted or terminated. *UMF. No. 19*. Therefore, she cannot be held liable pursuant to section 1983 for merely enforcing or implementing the Sheriff's required policies and/or procedures. *Edgerly*, 599 F.3d at 961-62.

In a government-operated bureaucratic institution, such as a county jail, there is no underlying basis to make the assumption that the assistant sheriff could unilaterally implement an internal jail policy of treating SVPs housed in Isolation differently from other inmates housed in Isolation.  Absent a specific directive or policy from her superiors, it is unreasonable to hold the assistant sheriff charged with overseeing the day-to-day operations of a county jail as capable of ensuring that SVPs are afforded better conditions than others housed in Isolation. There is no such policy that exists in this instance and an assistant sheriff is not a policy maker.

**CONCLUSION**

Based on the above, the Court finds that there are no material questions of fact precluding entry of summary judgment on either the issue of punishment or Mims' supervisory liability.  In both cases, a resolution requires attention to the applicable state and federal laws. In addition, Plaintiff offers no admissible evidence that can be presented to a trier of fact.  Plaintiff only offers speculation and innuendo, which is not a substitute for admissible evidence warranting a trial.  There is no evidence to raise the question that Mims may have had policy-making authority and there is no legal basis for finding liability based on respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  There is uncontradicted evidence that Mims did not possess final policy making authority over any policies and/or procedures governing Plaintiff's housing or privileges while at the Jail. Further, Plaintiff was classified and housed at the Fresno County Jail according to applicable law and policy that Mims was not involved in creating.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 136) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Mims' Cross-Motion for Summary Judgment (Doc. 147) is **GRANTED**; Defendant's request for judicial notice (Doc. 146) is **GRANTED**; and, Defendant's request to strike (Doc. 151) is **DENIED**.

//

//

//

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   **IT IS FURTHER ORDERED** that the Clerk's Office shall file a separate
Final Judgment in conformance with this Order and terminate this action.

   DATED this 26th day of January, 2015.

                                                    David C. Bury
                                          United States District Judge